## THE DAKOTA.

### WALSH v. THE DAKOTA.

#### (District Court, S. D. New York. March 26, 1894.)

COLLISION—STEAM VESSELS CROSSING—STARBOARD HAND RULE.

The ferryboat D., while crossing the East river from Brooklyn to New York, collided with the tug O. B., at the time going up stream near the New York shore, and having the D. on her starboard hand. On conflicting evidence the court found that the tide was nearly slack, and the D. making nearly a direct course across the river to her slip; that as soon as she saw the tug threatening to go between her and her slip, she blew one whistle, slowed down, and stopped and backed as soon as danger became

apparent. *Held*, that the ferryboat had done all that was required of her, and that the collision was due to the failure of the tug to keep out of the way.

Goodrich, Deady & Goodrich, for libelant.
Wilcox, Adams & Green, for respondent.

BROWN, District Judge. The ferryboat Dakota, while crossing from her slip at Broadway, Brooklyn, to Grand street, New York, came in collision with the libelant's tugboat Olive Baker, at about half past 6 in the morning of August 15, 1893. The starboard bow of the ferryboat struck the starboard side of the tug about amidships, at an angle of from $2\frac{1}{2}$ to 3 points. The time was about an hour and a half after low water at Governor's Island; and as the current in the East river continues to run down for about an hour and a half after low water, although there is a little upward current along the shores somewhat earlier, it is certain that there could not have been much flood tide to cause the ferryboat to deviate very greatly from a straight course across the river.

Beyond the fact that the Dakota gave a signal of one whistle, almost every other circumstance in the case is a subject of most flagrant contradiction. The general theory of the libelant, to the effect that after the Dakota had given one whistle, and the Olive Baker had passed to the right, so that the boats were really out of all danger of collision, the Dakota, when pointing astern of the tug, and nearly straight down river towards the navy yard, gave two whistles and swung still more to port towards the Brooklyn shore until she ran upon the Baker far on the Brooklyn side of the river, is not only improbable in the highest degree, but is contradicted throughout by the respondent's witnesses. Such navigation by the ferryboat is inconceivable and cannot be credited. The burden of proof is upon the libelant. I cannot regard any part of his case as established. The Dakota gave no signal of two whistles; but after her first single whistle, she gave only an alarm signal of three whistles. The collision was near the New York shore. I find that the ferryboat pursued her customary course towards the Grand street slip; that there was but a slight flood current, and that she did not head down river, or towards the navy yard at any time, nor towards the southwest, though the pilot's mistake and confusion in testifying, or some error in his compass, gives a slight color to the libelant's contention in that regard. As soon as the Olive Baker was seen coming up near the New York side, threatening to go between the Dakota and her slip, the Dakota properly gave a signal of one whistle, slowed down, and afterwards stopped and backed as soon as danger from the Baker became apparent. This was in accordance with the rules of navigation. When her whistle was given, the Olive Baker had the Dakota on her own starboard hand, and was bound to keep out of the way. She could easily have done so, either by going to the right, as was her duty to do, or by stopping and backing; neither of which she did.

I find that the Dakota did all that was required of her, by stop-

ping and backing as soon as such action on her part was apparently needful to avoid collision; and that the collision arose from the failure of the Olive Baker to take proper and timely steps to keep out of the way.

The libel is dismissed, with costs.